**EXHIBIT A**

1

C6DLAHMP                        Plea

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.         .                 10 CR 131 (PKC)

 5    MOHAMED IBRAHIM AHMED,

 6                  Defendant.

 7    ------------------------------x

 8                                           New York, N.Y.
                                             June 13, 2012
 9                                           3:53 p.m.

10
      Before:
11
                          HON. P. KEVIN CASTEL,
12
                                             District Judge
13

14                        APPEARANCES

15    PREET BHARARA
           United States Attorney for the
16         Southern District of New York
      BENJAMIN NAFTALIS
17    JOHN P. CRONAN
           Assistant United States Attorneys
18
      FEDERAL DEFENDERS OF NEW YORK
19         Attorneys for Defendant
      BY:  SABRINA SHROFF
20
      ALSO PRESENT:  FOUAD ELSHIEKH, Arabic Interpreter
21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C6DLAHMP                          Plea

1             (Case called)

2             THE COURT:  First order of business, I will ask the

3    clerk to swear the interpreter.

4             (Interpreter sworn)

5             THE COURT:  Thank you, sir.

6             Mr. Naftalis, why don't you bring me up to date on

7    your understanding of today's proceeding.

8             MR. NAFTALIS:  Your Honor, my understanding of today's

9    proceeding is that the defendant intends to plead guilty to a

10   superseding information, S2 10 CR 131, pursuant to a plea

11   agreement dated June 13 of 2012.

12            THE COURT:  All right.  And, Ms. Shroff, I take it

13   you're in concurrence?

14            MS. SHROFF:  Your Honor, that is my client's

15   application to the Court.

16            THE COURT:  All right.  I should advise counsel that I

17   have in my hand a 60-page draft of the decision on the motion

18   to suppress, which of course will now be suppressed.  It was

19   ready to go earlier this week when I received a call from

20   counsel and I refrained from filing it.

21            So that's where we are.  I advise you of that and I

22   take it, Ms. Shroff, it is still your decision that you and

23   your client wish to go forward with the plea proceeding.

24            Is that correct?

25            MS. SHROFF:  May I?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C6DLAHMP                              Plea

1                THE COURT:  Yes.

2                MS. SHROFF:  Okay.

3                (Defendant and counsel conferring)

4                MS. SHROFF:  Your Honor, it would be nice to know if

5      we prevailed, but I've confirmed with my client and inform the

6      Court that he wishes to proceed with his guilty plea.

7                THE COURT:  Okay.  Well, you can all proceed from here

8      on with your best thoughts as to what the outcome would have

9      been.  I say that to both sides.

10               Mr. Ahmed, before I accept a guilty plea from you I

11     must satisfy myself that you understand the rights you would

12     have if you went to trial and the rights you're giving up by

13     pleading guilty.  Also I must satisfy myself that there's a

14     factual basis for a plea of guilty and that you understand the

15     consequences of pleading guilty.

16               So in a moment I'm going to have the clerk place you

17     under oath.  I'm going to ask you certain questions.  I'm going

18     to inform you of certain rights.

19               If I ask you something or I tell you something and you

20     don't quite understand, please tell me.  I'll put it into

21     different words.

22               Also, if at any time this afternoon you wish to speak

23     in private with Ms. Shroff, please let me know that and I will

24     give you the opportunity to do that.

25               Do you understand that, sir?

C6DLAHMP                          Plea                                    4

1           THE DEFENDANT:  Yes.

2           THE COURT:  All right.  Please stand and the clerk

3   will administer the oath.

4           (Defendant sworn)

5           THE COURT:  All right.  Mr. Ahmed, please be seated.

6           You're now under oath and your answers to my questions

7   are subject to the penalties of perjury or of making a false

8   statement if you do not answer truthfully.  Also, anything you

9   say today may be used in a prosecution for those crimes.

10          Do you understand that, sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  How old are you, Mr. Ahmed?

13          THE DEFENDANT:  Thirty-eight.

14          THE COURT:  All right.  How far did you go in school?

15          THE DEFENDANT:  I haven't finished high school.

16          THE COURT:  All right.  Are you now or have you

17  recently been under the care of a medical doctor?

18          THE DEFENDANT:  No.

19          THE COURT:  Do you have any physical complaints, any

20  medical problems at present?

21          THE DEFENDANT:  No.  But since I had my hernia

22  operation, I feel that the area that they made the operation in

23  is numb.

24          THE COURT:  All right.  How do you feel today?

25          THE DEFENDANT:  Fine.

C6DLAHMP                          Plea

1              THE COURT:  Is your mind clear?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Have you ever been treated for a mental

4    illness?

5              THE DEFENDANT:  No.

6              THE COURT:  Ms. Shroff, any doubts as to defendant's

7    competence to plead?

8              MS. SHROFF:  No, your Honor.

9              THE COURT:  Same question for Mr. Naftalis.

10             MR. NAFTALIS:  No, your Honor.

11             THE COURT:  Based upon my observations of Mr. Ahmed

12   and his responses to my questions, I find that he is fully

13   competent to enter an informed plea.

14             Mr. Ahmed, have you in fact discussed the charges

15   against you with your lawyer, Ms. Shroff?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have you had enough time to consider all

18   of your options in this case?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Are you satisfied with your lawyer's

21   representation of you?

22             THE DEFENDANT:  Yes.

23             THE COURT:  All right.  Now I have in front of me a

24   piece of paper which is titled the Waiver of Indictment, and I

25   will have the clerk place it in front of Mr. Ahmed.

C6DLAHMP                        Plea

 1              Mr. Ahmed, did you in fact sign that waiver of

 2    indictment?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Did you understand that you had the right

 5    to have evidence underlying the charges presented to a grand

 6    jury of 23 people and to have those people decide by a majority

 7    vote whether you should be charged or not and that by signing

 8    the waiver of indictment, you gave up that right and permitted

 9    the government to file the charges based only on the signature

10    of the United States Attorney; do you understand that?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Did you read and understand the waiver

13    before you signed it?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Did you discuss it with Ms. Shroff before

16    you signed it?

17              THE DEFENDANT:  Yes.  Right before you came in, your

18    Honor.

19              MS. SHROFF:  Your Honor, may I just have a second?

20              THE COURT:  You may.

21              (Defendant and counsel conferring)

22              MS. SHROFF:  Your Honor, Mr. Ahmed just wants to make

23    one slight correction.

24              THE COURT:  You may proceed.

25              THE DEFENDANT:  Your Honor, this piece of paper was

C6DLAHMP                           Plea

 1    read by my attorney and the translator translated, but I didn't

 2    read it myself.

 3              THE COURT:  All right.  But the translator translated

 4    the content of the paper to you?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  All right.  And you understand you were

 7    giving up the right to have this grand jury, this body of 23

 8    people, decide whether or not you should be charged?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  I find that the waiver of indictment is

11    knowing and voluntary and it is accepted.

12              Well, first of all, I will deem the superseding

13    information to be filed in open court.

14              Ms. Shroff, have you and your client received, read,

15    and reviewed the superseding information bearing the docket No.

16    S2 10 CR 131?

17              MS. SHROFF:  I have read it, your Honor, and it was

18    read to him through the Arabic interpreter who's translating

19    today.

20              THE COURT:  Is there an application to waive the

21    public reading thereof?

22              MS. SHROFF:  There is, your Honor.  There is an

23    application to waive the public reading and, with the Court's

24    permission, for Mr. Ahmed to enter a guilty plea to it.

25              THE COURT:  All right.  I will take the latter point

8

C6DLAHMP                           Plea

1    under advisement, but the public reading is waived.

2          Mr. Ahmed, I'm now going to explain you to certain

3    rights you would have if the case went to trial and rights you

4    would be giving up by pleading guilty.

5          Under the Constitution and laws of the United States,

6    you are entitled to a speedy and public trial by an impartial

7    jury on the charges contained in the information.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  If there were a trial, you would not have

11   to prove that you were innocent.  The government would be

12   required to prove each element of each crime by proof beyond a

13   reasonable doubt.  You would be presumed to be innocent.  If

14   there were a trial, before you could be found guilty, a jury of

15   12 people would have to agree unanimously that you were guilty.

16         Do you understand all that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  If there were a trial, at every stage of

19   your case you'd be entitled to be represented by a lawyer, and,

20   if you could not afford a lawyer, one would be appointed at

21   public expense.

22         Do you understand all that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  If there were a trial, the witnesses for

25   the government would have to come to court to testify.  You

                        9

C6DLAHMP                          Plea

 1   would be able to see and hear them, confront them.  Your lawyer

 2   would have a right to question them through cross-examination.

 3   Your lawyer would be able to object to evidence offered by the

 4   government.  Your lawyer would be able to present evidence and

 5   could ask the court to compel witnesses to appear at trial on

 6   your behalf.

 7             Do you understand all that?

 8             THE DEFENDANT:  Yes.

 9             THE COURT:  If there were a trial, you would have the

10   right to testify if you chose to do so.  You could come up here

11   and take the witness stand.  Also, you would have the right not

12   to testify and no one would be permitted to draw any inference

13   or suggestion of guilt from the fact that you decided not to

14   testify.

15             Do you understand all that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  If there were a trial and the jury found

18   you guilty, you would have the right to appeal that finding.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Now, those are the rights you would have

22   if you went to trial.  If I accept the plea of guilty from you,

23   there will be no trial.  You will proceed to the sentencing

24   phase in which I will decide on the punishment to be imposed on

25   you.

C6DLAHMP                          Plea

1              Do you understand all that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Even now you have the right to change your

4    mind.  Instead of pleading guilty, you may plead not guilty and

5    go to trial.

6              Do you wish to plead not guilty and go to trial?

7              THE DEFENDANT:  Yes, I understand.

8              THE COURT:  No, the question is not whether you

9    understand, but whether you wish to plead not guilty and go to

10   trial in this case.  If you would like to do that, you may do

11   that.

12             THE DEFENDANT:  Yes, I will plead, your Honor.

13             THE COURT:  I'm sorry, sir, I didn't hear your answer.

14   Yes -- I didn't hear what else you said, sir.

15             THE INTERPRETER:  Plead.

16             THE COURT:  The question you're being asked is:  Do

17   you wish to plead not guilty and have a trial in this case?

18             THE DEFENDANT:  No, your Honor.  I will plead guilty.

19             THE COURT:  All right.  Mr. Ahmed, do you understand

20   that in Count One of the information you are charged with

21   conspiracy to provide material support to a foreign terrorist

22   organization, namely, Alshabaab?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that Count One carries a

25   maximum term of five years' imprisonment, a maximum term of

C6DLAHMP                         Plea

1    supervised release of three years, a maximum fine of the

2    greatest of $250,000, twice the gross pecuniary or monetary

3    gain derived from the offense or twice gross pecuniary loss to

4    persons other than yourself resulting from the offense, and a

5    $100 mandatory special assessment; do you understand all that?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Do you understand that Count Two charges

8    you with conspiracy to receive military-type training from a

9    foreign terrorist organization, namely, Alshabaab; do you

10   understand that, sir?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Do you understand that Count Two carries a

13   maximum term of imprisonment of five years, a maximum term of

14   supervised release of three years, a maximum fine of the

15   greatest of $250,000, twice the gross pecuniary gain derived

16   from the offense or twice the gross pecuniary loss to persons

17   other than yourself resulting from the offense, and a $100

18   mandatory special assessment; do you understand all that?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Do you understand that the total maximum

21   term of imprisonment on Counts One and Two is ten years'

22   imprisonment?

23               THE DEFENDANT:  Yes.

24               THE COURT:  All right.  Now, with regard to supervised

25   release, there are terms and conditions attached to it and if

C6DLAHMP                          Plea

1    you do not live up to those terms and conditions, you can be

2    returned to prison for the full period of supervised release.

3              So say, for example, you receive a prison term

4    followed by a period of three years' supervised release and you

5    live up to the terms of supervised release for two years but

6    then you violate one of the terms, you can be returned to

7    prison for a full period of three years.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Mr. Ahmed, are you a U.S. citizen?

11             THE DEFENDANT:  No.

12             THE COURT:  One of the consequences of pleading guilty

13   is that you will likely be deported and barred from reentry

14   into this country.

15             Do you understand that, sir?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Did you discuss that circumstance with

18   Ms. Shroff?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right.  The Court must require that

21   you make financial restitution to any person who I find was

22   injured by reason of your crimes.

23             Do you understand that?

24             THE DEFENDANT:  Is it possible for you, your Honor, to

25   repeat that?

C6DLAHMP                         Plea

1              THE COURT:  Yes.  Financial restitution means making

2       someone who was injured by your criminal conduct financially

3       whole, compensating them.  Now, if it turns out that I find

4       someone was injured by reason of your conduct, I'm required to

5       make that person whole by imposing a restitution obligation on

6       you.

7              Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Ms. Shroff, is it your client's intention

10      to admit the forfeiture allegations in paragraphs 7 through 12

11      of the information today?

12             MS. SHROFF:  Yes, your Honor.

13             THE COURT:  All right.  I take it Mr. Ahmed is not

14      serving any other sentence, state or federal, or being

15      prosecuted in state court for any crime, is that correct,

16      Ms. Shroff?

17             MS. SHROFF:  He's not being prosecuted nor is he

18      serving time for any other crime.

19             THE COURT:  Thank you very much.

20             Now, Mr. Ahmed, in sentencing you I will receive a

21      presentence report prepared by the office of probation which

22      gives me background information and a recommended range of

23      sentence under the sentencing guidelines.

24             After hearing from your lawyer and from the

25      government, I will have my own obligation to determine the

C6DLAHMP                      Plea

1   correct guideline range in this case.  Even after determining

2   the proper guideline range, I need not follow it and can

3   sentence you all the way up to the statutory maximum.  The

4   guidelines are advisory and they're not binding on the Court.

5   They are one of the factors that are considered under the

6   sentencing statute which is known as Section 3553(a).

7          Do you understand all that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, I understand that you have entered

10  into a plea agreement with the government.

11         Is that correct, sir?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  Let me show you an eight-page

14  document addressed to Sabrina Shroff and Sean Maher dated

15  June 13 on Department of Justice letterhead, and I will ask you

16  whether that is your plea agreement with the government?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Has anyone threatened you or forced you in

19  any way to enter into the plea agreement or to plead guilty in

20  this case?

21         THE DEFENDANT:  No.

22         THE COURT:  Is that your signature on the last page of

23  the plea agreement?

24         THE DEFENDANT:  That's correct.

25         THE COURT:  Did you have the plea agreement translated

C6DLAHMP                    Plea

1      into the Arabic language for you?

2                   THE DEFENDANT:  Yes.  He translated for me.

3                   THE COURT:  All right.  Did you discuss the plea

4      agreement with your lawyer, Ms. Shroff?

5                   THE DEFENDANT:  Yes.

6                   THE COURT:  Did you understand the plea agreement

7      before you signed it?

8                   THE DEFENDANT:  Yes.

9                   THE COURT:  All right.  Ms. Shroff, could you briefly

10     review with me the process of review with your client?

11                  MS. SHROFF:  Your Honor, the review of the plea

12     agreement?

13                  THE COURT:  Yes.

14                  MS. SHROFF:  I visited with Mr. Ahmed at the MCC, and

15     I visited along with and without the interpreter several times

16     between June 14 and today.  I visited with Mr. Ahmed this

17     morning along with the Arabic interpreter.  We did not have a

18     word-for-word written translation of the document, but Mr. --

19     I'm sorry, I don't know Fouad's last name.

20                  THE COURT:  The interpreter.

21                  MS. SHROFF:  Right.  He translated each paragraph as I

22     reviewed it with my client, and I ensured that Mr. Ahmed

23     understood each paragraph of the plea agreement.

24                  THE COURT:  All right.  Thank you, Ms. Shroff.

25                  Mr. Ahmed, does this plea agreement contain all of

C6DLAHMP                          Plea

1    your understandings with the government?

2              MS. SHROFF:  Your Honor, I'm sorry.  I meant -- I

3    apologize.  I meant that I reviewed it on -- I reviewed it

4    yesterday, which was June 12, and then I reviewed it the day

5    before, which was June 11.  Today is the 13th.

6              THE COURT:  We haven't gotten up to the 14th yet.

7              MS. SHROFF:  So that's when I got the plea agreement

8    and --

9              THE COURT:  Was on the 12th.

10             MS. SHROFF:  -- I think we got it late 11th and I

11   reviewed it with him on the 11th and the 12th.

12             THE COURT:  All right.  Thank you.

13             Mr. Ahmed, does the plea agreement contain all of your

14   understandings with the government?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Has anyone made any promises or given you

17   any inducements to enter into the plea agreement or to plead

18   guilty?

19             THE DEFENDANT:  Other than what exists in this plea

20   agreement, the ten years and all of that, nothing else.

21             THE COURT:  All right.  Nothing that's not set forth

22   in the agreement has been promised to you; is that what you're

23   telling me?

24             THE DEFENDANT:  No.

25             THE COURT:  Okay.  I want you to know, Mr. Ahmed, that

C6DLAHMP                      Plea

1    any prediction, calculation or estimate that anyone has made to

2    you as to what sentence I might give you is not binding on the

3    Court and if it turns out to be wrong, you will not be

4    permitted to withdraw your guilty plea.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right.  Now, one of the features of

8    your agreement with the government is that you and the

9    government have agreed on a guideline range that applies in

10   your case and, indeed, that guideline range is actually not a

11   range but a single number of 120 months' imprisonment.

12             Is that correct, sir?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Well, that agreement as to the stipulated

15   guideline sentence is binding on you and it's binding on the

16   government, but it's not binding on the Court.  I have my own

17   obligation to determine the correct guideline sentence.  It

18   cannot exceed 120 months in this case, and the guideline range

19   is one of the factors in determining the sentence.

20             One of the features of your plea agreement with the

21   government is that if I should sentence you to the 120 months,

22   the government has agreed not to appeal.  But you have also

23   agreed that if I sentence you to the 120 months or less than

24   120 months, you agree that you will not appeal or collaterally

25   attack that sentence.  You have waived your right to appeal or

C6DLAHMP                          Plea

 1   collaterally attack a sentence unless the sentence is above the

 2   120 months.

 3             Do you understand that, sir?

 4             THE DEFENDANT:  Yes.

 5             THE COURT:  And, as I've said, I cannot lawfully give

 6   you a sentence in excess of 120 months' imprisonment.  Of

 7   course, I can impose fine, supervised release and the mandatory

 8   assessment, the forfeiture and the restitution.

 9             Do you understand all that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  All right.  Mr. Naftalis, what are the

12   elements of the crime?  In other words, what would the

13   government have to prove beyond a reasonable doubt and what in

14   summary would be the government's evidence on Counts One and

15   Two were this case to go to trial?

16             MR. NAFTALIS:  Yes, your Honor.

17             With respect to superseding information S2 10 CR 131,

18   Count One charges a violation of 18 U.S.C. 371, namely, that

19   the defendant conspired to provide material support to a

20   designated foreign terrorist organization, here, Alshabaab.

21             The elements that the government would prove beyond a

22   reasonable doubt at trial would be:

23             First, that the defendant entered into an agreement to

24   provide material support or resources with at least one other

25   person.

C6DLAHMP                          Plea

1              Second, that the support or resources that were to be

2       provided were destined for a designated foreign terrorist

3       organization, here, Alshabaab.

4              Third, that the defendant knew one of three things

5       about Alshabaab:  either that it was designated by the

6       Secretary of State of the U.S. as a foreign terrorist

7       organization or that it engaged in terrorist activity or that

8       it engages in terrorism.

9              Lastly, either the defendant or a coconspirator would

10      have to -- we'd have to prove that a defendant or a

11      coconspirator took at least one overt act in furtherance of

12      said conspiracy.

13             Lastly, to satisfy the jurisdictional element, your

14      Honor, the government would prove that the defendant was first

15      brought or first landed in the United States in the Southern

16      District of New York.

17             Count Two also charges a violation of 18 U.S.C. 371,

18      namely, conspiring to receive military-type training from

19      Alshabaab between January 2009 and November 2009.

20             The elements are similar but I'll go over them.

21             First, that the defendant agreed with one or more

22      persons to receive military-type training.

23             Second, that the military-type training to be received

24      was from a designated foreign terrorist organization, here,

25      Alshabaab again.

C6DLAHMP                          Plea

1          Third, that the defendant knew that Alshabaab was an

2    FTO or engaged in terrorism or terrorist activities.

3          And, lastly, that the defendant or a coconspirator

4    took at least one overt act in furtherance of the conspiracy.

5          And, lastly, there's the jurisdictional element, as

6    before, that the defendant was first brought into the United

7    States into the Southern District of New York.

8          Were this case to go to trial, your Honor, the

9    government would prove every element beyond a reasonable doubt

10   through the defendant's confession or some part of it, law

11   enforcement testimony, both of the FBI and abroad, wiretap

12   intercepts, cooperating witnesses, photographic evidence,

13   physical evidence recovered from the defendant, experts in

14   explosives from the FBI.  I think that would be it, your Honor.

15         THE COURT:  And with regard to the overt acts?

16         MR. NAFTALIS:  With regard to the overt acts, your

17   Honor, for example, with respect to he conspired to receive

18   material support, the government would prove, for example, by

19   the testimony of witnesses that the defendant in fact handed

20   over a loaded AK-47 to a commander of Alshabaab while he was

21   leaving Somalia.

22         With respect to the training count, your Honor, the

23   government would prove through telephonic intercepts and/or the

24   defendant's admissions that he traveled to an Alshabaab guest

25   house for the purpose of receiving military-type training from

21

C6DLAHMP                              Plea

1   Alshabaab, among others.

2          THE COURT:  Mr. Ahmed, please tell me in your own

3   words what you did that leads you to believe that you are

4   guilty of the crimes charged in Counts One and Two.

5          THE DEFENDANT:  In the year of 2009, in Somalia, I

6   agreed with others to give material support by donating 2,000

7   euro to an organization that I know that United States consider

8   it to be a terrorist organization.  This organization is called

9   Alshabaab.

10          And in 2009, in Somalia, I asked other people and they

11   agreed to allow me to join a training camp, military training

12   camp, and I knew that United States considered that camp to be

13   a camp belonging to a terrorist organization and that

14   organization was known to me by United States that this

15   organization is a terrorist organization.  Again, this

16   organization is called Alshabaab, and I went to the center of

17   Alshabaab, which is close to Barawee, for that reason.

18          THE COURT:  All right.  Ms. Shroff, is there any basis

19   to challenge the government's proffer with regard to

20   jurisdiction and venue, i.e., that the defendant was first

21   brought to the United States in this district?

22          MS. SHROFF:  I know of no facts with which to

23   challenge that.

24          THE COURT:  All right.  Does the government agree

25   there's a sufficient factual predicate for a plea of guilty to

C6DLAHMP                         Plea

1   Count One and Two of the superseding information?

2         MR. NAFTALIS:  It does, your Honor.

3         THE COURT:  All right.  Ms. Shroff, do you agree that

4   there's a sufficient factual predicate?

5         MS. SHROFF:  Yes, your Honor.

6         THE COURT:  Ms. Shroff, are you aware of any valid

7   defense that would likely prevail at trial or any other reason

8   why your client should be precluded from pleading guilty?

9         MS. SHROFF:  Your Honor, I have discussed each likely

10  defense with my client and explored them fully with him and

11  informed him and again discussed them thoroughly.  With that

12  knowledge, Mr. Ahmed has decided to proceed and plead guilty.

13        THE COURT:  All right.  Mr. Ahmed, do you have any

14  questions for me?

15        THE DEFENDANT:  No, I have no questions, your Honor.

16        THE COURT:  All right.  With regard to Count One of

17  the superseding information S2 10 CR 131, how do you plead,

18  guilty or not guilty?

19        THE DEFENDANT:  Guilty.

20        THE COURT:  With regard to Count Two of the

21  information, how do you plead, guilty or not guilty.

22        THE DEFENDANT:  Guilty.

23        THE COURT:  With regard to the forfeiture allegations

24  which are contained in the information in paragraphs 7 through

25  12, do you admit those allegations or do you deny those

C6DLAHMP                        Plea

1    allegations?

2              THE DEFENDANT:  I don't deny, your Honor.

3              THE COURT:  All right.  Well, when you don't deny, is

4    that the same as admitting?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  Based upon your responses to

7    my questions and my observations, I find that you know your

8    rights, you know the consequences of pleading guilty, and

9    there's a factual basis for your plea of guilty.

10             Your plea of guilty and your admission to the

11   forfeiture allegations are accepted.

12             I further find that the plea agreement was knowingly

13   and voluntarily entered into.

14             I'm going to order a presentence investigation and

15   report and direct that no interview of you take place unless

16   Ms. Shroff or her representative or Mr. Maher are present.

17   It's important that you be candid, honest, truthful with the

18   people who prepare the report.  Tell them the good things about

19   your life and the not so good things.  The report will be

20   important in my decision on sentencing.

21             Before the day of sentencing, you will have an

22   opportunity to go over that report with an Arabic language

23   interpreter.  I urge you to do that.  If there are any mistakes

24   in the report, point them out through the interpreter to your

25   lawyer so that your lawyer can point them out to me.

24

C6DLAHMP                      Plea

1          THE DEFENDANT:  Yes.

2          THE COURT:  Sentencing in this case is set for

3   November 2, 2012, at 11:30 a.m.

4          Is there anything further from the government?

5          MR. NAFTALIS:  A moment, if I can confer with

6   Ms. Shroff?

7          THE COURT:  Yes.

8          (Pause)

9          MR. NAFTALIS:  May I just add one thing to the record,

10   your Honor?

11          THE COURT:  Yes, you may.

12          MR. NAFTALIS:  And I've talked to Ms. Shroff about

13   this.  I just wanted to just state that under -- it applies to

14   prior credit of time already in custody being applied to the

15   term of imprisonment that may be imposed here, that by order of

16   statute 18 U.S.C. 3585, it is that a defendant may receive

17   credit for prior service of time if it relates to the same

18   course of conduct, but that is a BOP determination.  And I'm

19   just putting on the record that the statute exists and the BOP

20   makes that determination.

21          THE COURT:  Not the Court.

22          MR. NAFTALIS:  Not the Court or the government.

23          THE COURT:  Right.

24          MS. SHROFF:  Your Honor, may I have a second with

25   Mr. Naftalis?

C6DLAHMP                          Plea

1            THE COURT:  Yes.

2            (Pause)

3            MR. NAFTALIS:  And I can represent, your Honor, that

4    the government states that, in its opinion, the defendant, when

5    he began -- when he was picked up in November '09 until he was

6    flown to the United States was in custody for the same course

7    of conduct as he is held here.  While it's still BOP's

8    determination, the government represents that is its take on

9    the facts.

10           THE COURT:  Right.  There's no dispute that once

11   post-indictment he was arrested by U.S. authorities and flown,

12   that by operation of law, the Bureau of Prisons must give him

13   credit for that time.  Correct?

14           MR. NAFTALIS:  Yes, your Honor, after arrest.

15           THE COURT:  So you are referring to the time when he

16   was arrested in Kano, Nigeria, until the time that he was

17   arrested by U.S. authorities in Nigeria, that there is no

18   obligation to give him credit for time served, that's a BOP

19   determination and out of the control of the Court and the

20   government?

21           MR. NAFTALIS:  Correct, your Honor.

22           THE COURT:  Ms. Shroff, do you understand that?

23           MS. SHROFF:  No.  I understand that since Mr. Ahmed

24   was not serving any time from November 20, 2009 onward and was

25   held in Abouja on no Nigerian charges whatsoever and, in fact,

C6DLAHMP                          Plea

```
 1    that time should be credited to him towards this case and the

 2    government at sentence will take no contrary view when that

 3    argument is made by defense counsel.  That is my understanding.

 4            THE COURT:  But the point that I understood

 5    Mr. Naftalis to be making is that determination, that you're

 6    free to urge that and indeed I think I heard the government say

 7    and acknowledge that he was held on the same course of conduct.

 8    But the authority who makes that determination is not the

 9    government and it's not the Court.  It's the Bureau of Prisons.

10            Do you dispute that?  The Court can make a

11    recommendation to the Bureau of Prisons.

12            MS. SHROFF:  I don't dispute anything with the Court

13    because, obviously, there are no agreements between the parties

14    and the Court.  I just want to be clear that my understanding

15    is that the government's position will be at sentence that he

16    should be credited with every day he spent in custody starting

17    in November 20, 2009.  That is their position to be

18    communicated to the Bureau of Prisons.

19            THE COURT:  But that last part is the important part

20    for not only for you to understand but, more importantly, for

21    your client to understand that when the government stands up

22    and urges this or you urge it and they don't oppose it, those

23    are merely words on the record.  And, yes, the Court can

24    recommend things to the Bureau of Prisons.  But the important

25    point that I want to make sure your client understands that for
```

C6DLAHMP                        Plea

1    that time period, that is a BOP determination, not a judicial

2    determination.

3                MS. SHROFF:  That's correct, your Honor.  And, of

4    course, Mr. Ahmed reserves and retains every application he

5    made, can possibly make in the event the Bureau of Prison gets

6    it wrong.  That's fine.

7                THE COURT:  I understand that as well.  Have you

8    discussed this topic with your client, Mr. Ahmed?

9                MS. SHROFF:  We have, your Honor.  We in fact

10   discussed it, and I discussed it again with the government

11   which is what prompted them to inform the Court.

12               THE COURT:  All right.  Anything further from the

13   government?

14               MR. NAFTALIS:  No, your Honor.  Thank you.

15               THE COURT:  Anything further from the defense?

16               MS. SHROFF:  Your Honor, may I have a second?

17               THE COURT:  You may.

18               (Defendant and counsel conferring)

19               MS. SHROFF:  Thank you, your Honor.

20               THE COURT:  All right.  And I simply want to commend

21   Mr. Naftalis, Ms. Strauber, who is not here today, you,

22   Ms. Shroff, and also Mr. Maher for the professional way in

23   which this case has been conducted from beginning to end; and I

24   thank you all for your hard work.

25               We're adjourned.